[Cite as *State v. Boatman*, 2022-Ohio-1191.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals No.  L-21-1170

        Appellee                            Trial Court No.  CR0202101597

v.

Floyd Boatman                                **DECISION AND JUDGMENT**

        Appellant                            Decided:  April 8, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**MAYLE, J.**

### Introduction

{¶ 1} The defendant-appellant, Floyd Boatman, appeals an August 3, 2021

judgment of the Lucas County Court of Common Pleas convicting him of attempted

felonious assault and domestic violence and sentencing him to an aggregate term of 54

months in prison.  For the reasons that follow, we affirm the trial court's judgment.

## Background

**{¶ 2}** Boatman was indicted for committing the offense of felonious assault, in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree (Count 1) and two counts of domestic violence, in violation of R.C. 2919.25(A) and (D)(1) and (D)(3), felonies of the fourth degree (Counts 2 and 3).

**{¶ 3}** At a change-of-plea hearing on July 15, 2021, Boatman entered a guilty plea, pursuant to *North Carolina v. Alford.* In exchange, the state amended Count 1 to a charge of attempt to commit felonious assault, in violation of R.C. 2923.02 and 2903.11(A)(1) and (D), a third degree felony, and agreed to dismiss one of the domestic violence charges (Count 2).

**{¶ 4}** In support of the plea, the state provided the following summary of the evidence: At 1:30 a.m. on April 23, 2021, Boatman's "live-in" girlfriend, A.A., called 911 for "help." When the responding officers arrived at the couple's apartment complex, they found A.A. screaming and observed "significant swelling above her right eye to the point that her left eye was swollen shut." A.A. told police that she and Boatman had argued hours before, that she had left their apartment, and that when she returned, Boatman "knocked her to the ground," climbed on top of her, and then "punched her in the face multiple times." Boatman fled the scene when A.A. called 911. Later, at the hospital, A.A. received a text message from Boatman that read, "before I go to jail again, I'm breaking that jaw, watch."

2.

{¶ 5} A.A. returned home at 7:30 a.m., still April 23, 2021. When she did not see Boatman's car in the parking lot, A.A. assumed that he was not home. But, Boatman was there, "waiting in the back bedroom for her and [he] attacked her yet again." This time, Boatman "punched her several times in the head until she fell to the floor" and "kicked [her] several times in the head with his boots on." A.A. called 911, and Boatman, once again, fled the scene. A.A. was taken to a different hospital where she was treated for a nasal fracture, that was surgically corrected days later. At the hearing, the state provided the court with photographs showing "extensive bruising and swelling to the victim's eyes" as a result of "these two separate assaults."

{¶ 6} During the colloquy, the trial court explained to Boatman that he faced a maximum prison sentence of up to 36 months as to the attempted felonious assault charge, and up to 18 months as to the domestic violence charge, for a total prison term of 54 months, if run consecutively. Boatman acknowledged his understanding of the maximum penalty, in writing and on the record.

{¶ 7} The trial court accepted Boatman's plea and convicted him of attempted felonious assault and domestic violence. At Boatman's request, the court then ordered a presentence investigation ("P.S.I.").

{¶ 8} At sentencing, the defense acknowledged Boatman's criminal history, "dat[ing] back into his juvenile years, a good 20 years" and an "escalation in his record." Upon questioning by the court, the state confirmed that the "significant amount of

3.

domestic violence and assault charges" from 2019 and a first degree misdemeanor assault conviction from 2020 also involved A.A., i.e. the victim in this case.

{¶ 9} Boatman personally addressed the court. He claimed not to remember any of the events in this case due to his drug usage that night. But, he also denied any "intention[] of hurting * * * trying to kill * * * or beat[ing]" A.A.

{¶ 10} The trial court sentenced Boatman to 36 months as to Count 1 and 18 months as to Count 3, the terms to be served consecutively, for an aggregate prison term of 54 months. The court also imposed a mandatory term of three years of postrelease control as to Count 1 and up to three years of discretionary postrelease control as to Count 3.

{¶ 11} Boatman appealed and raises a single assignment of error for our review:

> The trial court erred in sentencing Appellant to a prison term based upon dismissed Domestic Violence charges as Appellant retained a presumption of innocence to those charges.

### Law and Analysis

{¶ 12} We review a challenge to a felony sentence under R.C. 2953.08(G)(2) which provides that an appellate court may increase, reduce, or otherwise modify a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

4.

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 13} Boatman does not claim that his sentence violated any of the statutes identified in R.C. 2953.08(G)(2)(a), leaving R.C. 2953.08(G)(2)(b) as the only basis for challenging his sentence.

{¶ 14} A sentence is not clearly and convincingly "contrary to law" for purposes of R.C. 2953.08(G)(2)(b) where the trial court has properly applied postrelease control, sentenced the defendant within the statutorily-permissible range, and considered the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12. *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 15. However, "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 20. And, the trial court's consideration of the factors set forth in R.C. 2929.11 and 2929.12 is presumed even on a silent record. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1; *State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94, (1992).

5.

{¶ 15} In this case, Boatman—correctly—does not argue that the trial court erred in weighing the factors set forth in R.C. 2929.11 and 2929.12.  Indeed, as the Ohio Supreme Court in *Jones* made clear, "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12."  *Jones* at ¶ 42.  While Boatman concedes that this court may not "conduct a freestanding inquiry" to determine whether the record supports the sentence or substitute our judgment for the trial court's regarding the appropriate sentence, he argues that, because the trial court made findings under R.C. 2929.11 and 2929.12, we may "review those findings for certain limited purposes."  Appellant's Brief at 2, quoting *Jones* at ¶ 42, 45, 48 (Fischer, J., concurring) (Agreeing with the majority but writing separately to emphasize that an appellate court may review the trial court's findings under R.C. 2929.11 and 2929.12 for "certain limited purposes," including, for example, whether the sentence was "based on an offender's 'race, ethnic background, gender, or religion.'").  Likewise, R.C. 2953.08 does not preclude an appeal of a sentence on constitutional grounds.  *State v. Patrick,* 164 Ohio St.3d 309, 2020-Ohio-6803, 172. N.E.3d 952, ¶ 15-22.

{¶ 16} Here, in imposing maximum and consecutive sentences, the court said,

I do note that there was a sequence of increasing allegations of violence with dismissal, and the court is only going to note that there were

6.

allegations[.]  I do not note any evidence or any form of conviction on that, but charges were filed and allegations of domestic violence existed.

There was then a plea to domestic violence in the fall of 2020 in which there was finding of guilt, a sentence, a request for batterer's intervention and protective orders put in place with regard to no contact with the victim.

We then have the subsequent and quick sequence of events of increasing, escalating and very, very violent behavior that occurred [in this case], and in that the course of conduct that was occurring during that time was so great and unusual that no one prison term for that offense reflects the seriousness of your conduct[.]  [T]he court does find that the harm was so great and unusual that it would meet for the burden for consecutive sentences.

In addition, with the escalation of your criminal history, consecutive sentences can be supported based on the requirement that the court finds that consecutive sentences are necessary to protect the public from future crime or punishment and that they are not disproportionate to the seriousness of your conduct or the danger that you pose.  (July 29, 2021 Tr. at 13-14).

7.

{¶ 17} Boatman argues that his sentence is "contrary to law" because the trial court "reli[ed] upon prior allegations of domestic violence to justify a maximum prison term with consecutive sentences." Boatman contends that the court's reliance on "mere * * * allegations" violated his right to be presumed innocent of those charges. We reject Boatman's argument for several reasons.

{¶ 18} First, we note—as a point of fact—that Boatman does not profess his innocence in this case, including as to the domestic violence charge that was dismissed under the plea agreement. Rather, he claims that he was so "high off drugs [that he] blacked out [and doesn't] remember anything that happened." Similarly, Boatman has acknowledged an extensive criminal history including a recent "escalation in his record."

{¶ 19} Either way, the presumption of innocence does not apply in sentencing proceedings. *State v. Wiles*, 59 Ohio St.3d 71, 89, 571 N.E.2d 97 (1991), citing *State v. Hutton,* 53 Ohio St.3d 36, 42–43, 559 N.E.2d 432 (1990). As articulated by the Ohio Supreme Court, "[f]ew things can be so relevant as other criminal activity of the defendant: To argue that the presumption of innocence is affronted by considering unproved criminal activity is as implausible as taking the double jeopardy clause to bar reference to past convictions." (Internal citations and quotations omitted) *State v. Burton*, 52 Ohio St.2d 21, 23, 368 N.E.2d 297 (1977). In other words, the trial court did not violate Boatman's right to be presumed innocent by considering previous allegations of domestic violence against him.

8.

**{¶ 20}** Likewise, the trial court's consideration of other charges against Boatman did not render his sentence contrary to law. R.C. 2929.12 ("Factors to consider in felony sentencing") specifically requires that a sentencing court "shall consider * * * any * * * relevant factors," which may include a broad range of information in fashioning a sentence. Thus, a sentencing court is "not confined to evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." *State v. Bowser,* 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.). Specifically, a court may consider a defendant's prior arrests, even if none yields prosecution, unindicted acts, not guilty verdicts and criminal charges that are dismissed under a plea agreement. *Id.* at ¶ 15. Recently, we addressed the same argument raised by Boatman in this case. There, as here, we found that "uncharged crimes and charges dismissed pursuant to plea agreements may be considered at sentencing * * * [s]o long as they are not the sole basis for the sentence." *State v. Griffin*, 6th Dist. Wood No. WD-20-081, 2021-Ohio-3137, ¶ 19, citing *State v. Lanning*, 6th Dist. Ottawa No. OT-19-024, 2020-Ohio-2863, ¶ 17 and *State v. Goodluck*, 6th Dist. Lucas No. L-16-1027, 2017-Ohio-778, ¶ 11. *See also State v. Skaggs,* 4th Dist. Gallia No. 16CA19, 2017-Ohio-7368, ¶ 15 (Uncharged crimes are part of the defendant's social history and may be considered).

**{¶ 21}** Here, in imposing maximum, consecutive sentences, the trial court based its decision on a number of factors. But, it focused primarily on the seriousness of

9.

Boatman's conduct, commenting that it had never seen this "level of damage" to a body that did not involve "a lot of weaponry" and was "as bad as * * * [the court has] seen where someone hasn't died." The court also expressed the need to protect A.A. and the community from Boatman even though "prison is just a time away from here," and "once you're out, you're still equally not amenable to living in this [community]." The court lamented that it just did not have "any additional sanctions." Finally, the court sharply rejected Boatman's attempt to deflect blame by characterizing him as "the most calculated blacked out person" who—after committing the first act of violence against A.A.—"knew to lie in wait for [her] return" and to leave his vehicle "somewhere else so she'd have no forewarning * * * of a secondary attack."

{¶ 22} Based upon the above, we reject Boatman's claim that the trial court imposed its sentence on "the mere fact [that] charges were filed and allegations of domestic violence existed." The dismissed charges from 2019 and the dismissed count from this case were one of many factors that the trial court considered in fashioning its sentence. Therefore, the trial court did not err in taking into account those charges, and his sentence is not contrary to law. Accordingly, we find that Boatman's assignment of error is not well-taken.

## Conclusion

{¶ 23} In imposing maximum and consecutive sentences in this case, the trial court did not err by considering charges that were dismissed against Boatman. A court

10.

may consider a defendant's prior arrests, including those that do not result in conviction, when they are not the sole basis for the sentence.  Here, the charges were but one of many factors considered by the trial court in fashioning Boatman's sentence. We find Boatman's assignment of error not well-taken.

{¶ 24} We affirm the August 3, 2021 judgment of the Lucas County Court of Common Pleas.  Boatman is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.